IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION, RETIREE MEDICAL BENEFITS TRUST individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | Case No. 09 C 2046<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION & ORDER

Plaintiff Pirelli Armstrong Tire Corporation, Retiree Medical Benefits Trust ("Pirelli") filed suit against Defendant Walgreen Company ("Walgreens") individually and on behalf of all others similarly situated, alleging unjust enrichment (Count I) and violation of thirty-five (35) state consumer protection statutes (Count II). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Walgreens moves this Court to dismiss Pirelli's Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below Walgreens' Motion to Dismiss is granted.

## FACTS

The following facts are taken from the allegations in the Plaintiff's Complaint, which are accepted as true for the purpose of deciding this Motion to Dismiss. Pirelli, a voluntary employee benefits association maintained pursuant to the federal Employment Retirement Security Act, 29

1

U.S.C. §§ 1132, *et seq.*, provides health and medical benefits to participants and their beneficiaries. Compl. ¶ 5. Walgreens operates approximately 7,000 retail pharmacies in forty-nine (49) states, the District of Columbia, and Puerto Rico. Compl. ¶ 6. As a third-party payor ("TPP"), Pirelli reimburses pharmacies such as Walgreens for prescription drugs purchased by plan participants and their beneficiaries. Compl. ¶ 1. Pirelli alleges that Walgreens engaged in an unlawful scheme to overcharge TPPs when dispensing generic versions of three brand-name drugs: (1) ranitidine HCI ("ranitidine"); (2) fluoxetine hydrochloride ("fluoxetine"); and (3) selegiline hydrochloride ("selegiline"). *Id.*

The alleged scheme revolved around the price differential between generic drugs in tablet and capsule form. *Id*. When a generic drug is found to be bioequivalent to the brand-name drug, the FDA assigns it an "AB" rating, and it can be used interchangeably with the brand-name drug. Compl. ¶¶ 8, 10. Although pharmacists can substitute an AB-rated generic for a brand-name drug absent a dispense as written order in the prescription, because of the differences in form and administration schedules between capsules and tablets, they may not substitute a capsule version of a drug with the tablet form, or vice versa. Compl. ¶ 11. As part of the alleged scheme, between July 1, 2001 and 2005, Walgreens would fill prescriptions written for the drugs in tablet form with the more expensive capsule form, and vice versa, and as a result of these substitutions, Pirelli and other TPPs reimbursed Walgreens two to four times more than they would have had the prescriptions been filled as written. Compl. ¶ 1.

This reimbursement rate is the primary source of dispute between Pirelli and Walgreens. Individuals with private insurance through a TPP such as Pirelli only pay a flat percentage or "co-pay" when purchasing prescription drugs, and the remainder is paid by the TPP. Compl. ¶ 12.

2

While pharmacies determine what price they charge insured customers, the reimbursement rate is generally established by pharmacy benefit managers ("PBMs") acting on behalf of TPPs. Compl. ¶ 13. The reimbursement rate almost universally consists of the ingredient cost portion and the dispensing fee. Compl. ¶ 14. The ingredient cost for most generic drugs is based on a Maximum Allowable Cost ("MAC") that is determined by a TPP or PBM as the most they will reimburse the pharmacy for that drug. Compl. ¶ 15. The MAC is determined by gathering the prices of each manufacturer's version of a generic drug and using a formula based on Average Wholesale Price ("AWP"). Compl ¶ 17. The AWP, published by drug manufacturers, is the standard benchmark for reimbursement of brand-name drugs, but it is only used to determine the reimbursement rate of generic drugs when there is no MAC price available. *Id.* Pharmacies tend to earn greater profits selling generic drugs that are priced based on AWP as opposed to those subject to MAC limitations. Compl. ¶ 18.

During the relevant period, Pirelli's PBM established the reimbursement rate for generic drugs at AWP-14% plus a $2.50 dispensing fee or MAC plus a $2.50 dispensing fee, whichever was applicable, for certain plan beneficiaries, and AWP-35% plus a $1.90 dispensing fee or MAC plus a $1.90 dispensing fee, whichever was applicable, for other plan beneficiaries. Compl. ¶ 20. Of the three drugs in question, ranitidine and selegiline are generally manufactured and marketed in tablet form, while fluoxetine is generally manufactured and marketed in capsule form. Compl. ¶¶ 21, 23, 25. Because ranitidine and selegiline capsules and fluoxetine tablets were produced by so few manufactures and rarely prescribed, MACs were not adopted for these drugs in those respective forms. Compl. ¶¶ 22, 24, 26. Absent a MAC, reimbursement for the drugs in these forms generally involves the application of an AWP-based formula, resulting in a higher reimbursement rate. *Id.*

3

Citing to information revealed by a former Walgreens pharmacist in a previous *qui tam* suit, Pirelli alleges that it was Walgreens corporate policy to systematically change prescriptions written for dosage forms that were subject to MAC reimbursement limits, enabling Walgreens to evade the MACs and take advantage of the pricing differential between the tablet and capsule forms. Compl. ¶ 28. Pirelli claims that Walgreens pharmaceutical distribution system was set up so that it was difficult to fill prescriptions in dosage forms that were subject to MACs. Compl. ¶ 29. In support of its allegation, Pirelli cites to testimony by the former Walgreens pharmacist in the *qui tam* suit which claims that: 1) Walgreens personnel could not process orders for ranitidine tablets as written but instead filled the prescriptions with capsules; 2) Walgreens pharmaceutical dispensing computer system allowed pharmacists to switch dosage forms and they regularly did so when refilling prescriptions for ranitidine tablets, and; 3) they did this without obtaining the legally required physician's authorization. *Id.*

Pirelli claims that on several occasions Walgreens was reimbursed by Pirelli for the more expensive dosage form when the less expensive form was available. Compl. ¶ 34. A single patient's prescription history from November 2001 to May 2005 shows that the average reimbursement rate charged by Walgreens for ranitidine was $62.11 more than what Pirelli paid to other pharmacies. *Id.* While the reimbursement rate paid by Pirelli to Walgreens was substantially higher for ranitidine, the individual patient's co-payment remained constant, ranging from $8-$10 during the period in question. *Id.* On June 4, 2008, the *qui tam* proceeding was unsealed and Pirelli learned of Walgreens practice of switching dosage forms. Comp. ¶ 35. Ten months later Pirelli brought these claims against Walgreens.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

As an initial matter, both parties devote substantial analysis to the viability of a nationwide class action alleging consumer fraud. The putative class, all similarly situated TPPs who had beneficiaries fill prescriptions at Walgreens (Compl. ¶ 38), presents serious potential problems of manageability and conflict between the various states' consumer protection statutes. Nonetheless, it is premature to engage in this analysis at the motion to dismiss stage, before Pirelli has even moved for class certification. *See e.g., Szabo v. Bridgeport Machines., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (highlighting the differing standard and factors considered for a Rule 23 motion as opposed to a Rule 12 motion); *Walker v. County of Cook*, 05 C 5634, 2006 WL 2161829, at *2 (N.D. Ill. July 28, 2006) (holding that issues regarding commonality and typicality required under Rule

23 were prematurely raised in a 12(b)(6) motion); *Oxman v. WLS-TV*, 595 F. Supp. 557, 561-62 (N.D. Ill. 1984) (holding that motion to dismiss was premature considering the early stage of the litigation and suggesting that the same issues would be better raised in a motion opposing class certification).

## I. Lack of Particularity in Pleading

Walgreens moves to dismiss Pirelli's consumer fraud claim (Count II) asserting that Pirelli's Complaint fails to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). Pirelli's Complaint alleges that Walgreens violated the consumer protection statutes of thirty-five (35) different states by filling prescriptions written for the various drugs in capsule or tablet form with dosages in the alternate form. Compl. ¶ 49.

As an initial matter, while Pirelli's Complaint asserts that Walgreens violated thirty-five separate consumer protection statutes, Pirelli's allegations are so sparse with respect to where the specific fraudulent conduct occurred and where it personally suffered injury that the Court cannot even determine which state consumer protection statute to use in analyzing whether Pirelli has stated a claim for consumer fraud. *See Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E. 2d 801, 853-54 (Ill. 2005) (establishing choice-of-law rule based on where transactions "occur primarily and substantially"); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ( in a consumer fraud case, "the injury is decided where the *consumer* is located."). In their submissions to the Court, both Walgreens and Pirelli have argued only Illinois substantive law and therefore for purposes of this motion to dismiss the Court will address Pirelli's consumer fraud claim under the Illinois Consumer Fraud Act. *See American Home Assur. Co. v. Stone*, 61 F.3d 1321, 1324 (7th Cir. 1995) (applying Illinois law where neither party made a choice of law argument and argued only

Illinois law in their submissions to the trial court*); Vega v. Contract Cleaning Maint., Inc.*, 03 C 9130, 2004 WL 2358274, at *4 n. 3 (N.D. Ill. Oct. 18, 2004) (St. Eve, J.) (same).

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Pirelli must allege: 1) a deceptive act or practice by Walgreens; 2) Walgreens' intent that Pirelli rely on the deception; 3) that the deception occurred in the course of conduct of trade or commerce; 4) actual damage to Pirelli; and 5) that the damage was proximately caused by Walgreens. *See Cozzi Iron & Metal, Inc. v. United States Office Equip.*, 250 F.3d 570, 575-76 (7th Cir. 2005); *Gredell v. Wyeth Labs, Inc.*, 854 N.E.2d 752, 756 (Ill. App. Ct. 2006). A complaint alleging a violation of the ICFA must be pleaded with the same particularity as common law fraud and must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. Proc. 9(b) (In alleging fraud...a party must state with particularity the circumstances constituting fraud . . .); *see also Davis v. G.N. Mortgage* Corp., 396 F.3d 869, 883 (7th Cir. 2005) (consumer fraud claims must be pleaded with the same level of specificity required by Rule 9(b)); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1002 (N.D. Ill. 2008) (same); *Connick v. Suzuki Motor Co.*, 675 N.E.2d. 584, 593 (Ill. 1996) (same).[1] This heightened standard requires that Pirelli allege the identity of the person making the representation, the time, place and contents of the misrepresentation, and the method by which the misrepresentation was communicated. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story."); *see also*

---

[1] The Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, *et seq.*, the only other consumer protection statute mentioned by either party in their submissions to the Court, also requires that claims brought under the Act meet the heightened standards of Fed. R. Civ. Proc. 9(b). *See Metropolitan Casualty & Ins. Co. v. Bell*, 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) *citing Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. App. Ct. 1995).

*IWOI*, 581 F. Supp. 2d at 1002.[2]

Pirelli's Complaint falls fails to meet specificity requirement of Rule 9(b). The allegations in Pirelli's Complaint are derived primarily from the information disclosed in the *qui tam* proceeding, *United States of America ex rel. Bernard Lisitza v. Walgreen Co.* No. 03-C-00744 (N.D. Ill.). Compl. ¶ 29. While relying on allegations contained in the previous *qui tam* case against Walgreens helps to establish the foundation for Pirelli's argument that Walgreens had a corporate policy of switching dosage forms, it provides no details to substantiate Pirelli's claim that *it* was defrauded by Walgreens.

Pirelli's claim that it has met the heightened standard through the excessive detail it provided regarding: 1) the differences in pricing and effect between drugs in tablet and capsule form; 2) the derivation of and differences between MACs and AWPs and; 3) the complex relationship between TPPs, PBMs and pharmacies that govern the reimbursement of prescription drugs, is similarly misguided. Pl. Resp. 9; Compl. ¶¶ 7-32. This information only provides a helpful backdrop against which Pirelli could make specific allegations regarding Walgreens' fraudulent conduct. Pirelli's Complaint completely lacks any details regarding Walgreens' fraudulent conduct toward Pirelli and fails to identify even one specific fraudulent transaction at a specific Walgreens location involving an identified Walgreens employee. Because Pirelli's Complaint fails to specify almost any of the 'who, what, where, when, and how' requirements, it does not satisfy Rule 9(b)'s heightened pleading requirement and therefore fails to state a claim against Walgreens for consumer fraud.

To begin, Pirelli does not identify any individual who made a misrepresentation of or

---

[2] While the 7th Circuit has recently departed from requiring all claims under the ICFA to meet Rule 9(b)'s heightened pleading standards, it has only done so for claims of unfair business practices; claims sounding in fraud or deception are still required to meet the heightened pleading requirements of Rule 9(b). *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing*, 536 F.3d 663, 670 (7th Cir. 2008).

concealed a material fact, instead alleging merely that Walgreens, as a company, adopted a corporate policy of switching prescriptions with dosage forms that were not subject to MAC limitations. Pirelli's failure to identify the specific individual(s) that misrepresented or concealed the fact that Walgreens switched dosage forms precludes its Complaint from satisfying the heightened pleading requirements of Rule 9(b). *See U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007) (dismissing ICFA claim for failing to identify specific individual that made allegedly fraudulent statement).

Pirelli's allegations as to the time, place and contents of Walgreens' allegedly fraudulent activity are similarly bare-boned. Although Pirelli alleges the content of the fraud, the switching of dosage forms on multiple occasions, its Complaint is nearly devoid of any specific allegations of the time and place of the fraudulent activity. Pirelli identifies the relevant time period as July 1, 2001 to 2005. Compl. ¶ 28. While the Court does not read Rule 9(b) to require the provision of exact dates, giving such a vague time frame is insufficient to adequately plead when the allegedly fraudulent activity took place. The lack of specificity in Pirelli's Complaint is even more striking with regards to the place of the fraudulent activity. In the process of alleging violations of thirty-five different consumer protection statutes, Pirelli fails to include even a single location where any of these statutes were violated. The only specific location mentioned is Walgreens' corporate headquarters in Deerfield, Illinois, where the corporate policy was allegedly hatched. Compl. ¶¶ 6, 28. Without alleging that any transactions actually occurred in Illinois, however, Pirelli's claim that a fraudulent scheme originated at a corporate headquarters in Illinois is insufficient to bring Pirelli, an out-of-state resident, within the ambit of the ICFA. *See Avery*, 835 N.E.2d at 855 (finding claim by non-Illinois resident that a scheme 'disseminated' from a corporate headquarters in Illinois

9

insufficient to allow plaintiff to bring a claim under the ICFA). Moreover, without alleging where any of the allegedly fraudulent transactions took place, it is impossible to know where Pirelli was actually injured.

The lone example offered by Pirelli of the dosage-form switching employed by Walgreens fails to remedy this defect. While it does show that Pirelli paid a higher reimbursement rate when an anonymous Pirelli beneficiary filled prescriptions at Walgreens, it does not specify where–what state or specific Walgreens–these higher reimbursement rates were paid, what Walgreens representative(s) engaged in these transactions, or the method by which these transactions occurred. Pirelli's Complaint utterly fails to put Walgreens on notice of the specific allegations with which it is confronted. Because Pirelli has failed to plead with specificity the who, what, where, when and how, it has failed to state a claim against Walgreens for consumer fraud and therefore Count II of its Complaint is dismissed.

## II. Tolling of the Statute of Limitations

Walgreens also moves to dismiss Pirelli's thirty-five states' consumer fraud act violations as time-barred under the ICFA's statute of limitations period. In support of its contention that all of Pirelli's consumer fraud act violations are subject to Illinois' statute of limitations period, Walgreens asserts that the statute of limitations is procedural under Illinois choice-of-law principles, and therefore the Illinois statute of limitations automatically applies. This argument, however, is incomplete. "A federal court sitting in diversity must follow the statute of limitations that the state in which it is sitting would use." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004). In Illinois, such statutes are procedural in their nature and the Illinois' statue of limitations will usually apply. *See FDIC v. Wabick*, 335 F.3d 620, 627 (7th Cir. 2003). Where a cause of action is

created by statute and a time is fixed within which the cause of action must be asserted, however, the law of the state where the action occurred must govern. *See Cox v. Kaufman*, 571 N.E. 2d 1011, 1015 (Ill. App. Ct. 1991). In such circumstances, the limitations period is not merely procedural, but a fundamental component of the right itself. *See Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir. 1977) ("[W]here (a) statue creates a right that did not exist at common law and restricts the time within which the right might may be availed of, or otherwise imposes conditions, such statue is not a statute of limitation (in the normal sense) but the time element is an integral part of the enactment."). Therefore, without an exhaustive review of each of the thirty-five states' consumer fraud statutes to determine whether they contain a fixed time within which a cause of action must be asserted, the Court cannot determine whether or not the ICFA's statue of limitations applies to these claims. Furthermore, as stated above, because Pirelli's Complaint fails to allege where it suffered its injury or where the allegedly fraudulent transactions occurred, it has failed to allege a violation of any state's consumer protection act. Therefore, at this time it is premature for the Court to wade through thirty-five states' statutes, without any assistance from the parties, to determine the applicable statue of limitations period for each states' consumer protection act and whether Walgreens' claim under each act is time-barred. However, because the parties have addressed the ICFA's statue of limitations, which would apply to Pirelli's ICFA claim if he had satisfied Rule 9(b)'s pleading requirements, the Court will address Walgreens' statue of limitations argument with respect to this claim.

The ICFA provides that a plaintiff must bring a claim for violation of the act within three years of the date the cause of action accrues. *See* 815 ILCS 505/10a(e). While the only allegedly fraudulent transactions mentioned Pirelli's Complaint occurred in 2002 and 2003, thereby placing

Pirelli's claim well outside the statutory limit, Pirelli asserts that the statute of limitations was tolled by the fact that Pirelli was unaware of Walgreens' scheme until the *qui tam* whistleblower proceeding was unsealed on June 4, 2008.

Pirelli cites the "discovery rule" used in Illinois in support of its argument that its claim is timely. Under the "discovery rule," a cause of action accrues when the plaintiff "knows or should know of his injury and knows or should know that it was wrongfully caused." *See Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (citing *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981)). Walgreens asserts that Pirelli's possession of records, which they included in their Complaint, showing the differing prices and dosage forms dispensed at Walgreens demonstrates that they could have learned of the scheme well before the statute of limitations expired; however, Pirelli's mere possession of its payment records is not alone sufficient to start the statute of limitations. There must also be some suspicious circumstance that would alert Pirelli to Walgreens' potentially fraudulent conduct. *See Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997) (while all pertinent documents were in plaintiff's possession, the court found that "more than bare access to necessary information is required to start the statute of limitations running. There must also be a suspicious circumstance to trigger a duty to exploit the access."). Furthermore, at this stage, the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations. *See Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). Accepting Pirelli's claim that it does not track what it spends on individual drugs, but rather on overall drug costs, it is not unreasonable that it was unaware of the substantial pricing discrepancy until it learned of the *qui tam* suit against Walgreens which was unsealed on June 4, 2008. Therefore, assuming Walgreens can state a claim under the ICFA there

is a set of facts that if proven can establish a defense to the statue of limitations period. *See Nolan v. Johns-Manville Asbestos*, 421 N.E. 2d 864, 868-69 (Ill. 1981) (the question of when a party should have known of the existence of an injury to delay the commencement of the statute of limitations involves a fact inquiry). Therefore, Walgreens' motion to dismiss Pirelli's ICFA claim as time-barred is denied without prejudice.

### III. Unjust Enrichment

Lastly, Pirelli brings a claim for unjust enrichment, seeking the establishment of a constructive trust that would consist of restitution in the amount of the reimbursement differential between the more expensive and less expensive dosage forms of ranitidine, fluoxetine, and selegiline (Count I). A claim of unjust enrichment alone, however, is not sufficient to raise a cause of action to justify recovery, but rather it must rest upon some underlying fraudulent conduct or the breach of a fiduciary duty. *See Charles Hester Enterprises, Inc. V. Illinois Founders Ins. Co.,* 484 N.E.2d 349, 354 (Ill. App. Ct. 1985). As Pirelli has not claimed a fiduciary relationship with Walgreens, the only way it can proceed with a claim for unjust enrichment is by effectively claiming Walgreens engaged in fraudulent conduct. As stated above, Pirelli's Complaint fails to state a claim of fraud against Walgreens and therefore its claim for unjust enrichment must be dismissed. *See e.g., Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) (upholding dismissal of unjust enrichment claim when trial court found that there was no underlying violation of the ICFA); *Mulligan v. QVC*, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 2008) (upholding dismissal of unjust enrichment claim in the absence of a separate cause of action for consumer fraud).

### **CONCLUSION AND ORDER**

For the reasons stated, Walgreens' Motion to Dismiss is granted. Counts I and II of Pirelli's

Complaint are dismissed without prejudice for failure to state a claim. Pirelli is given fourteen days from the date of this Order to file an Amended Complaint.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 31, 2009