**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, individually and on behalf of others similarly situated, | ) ) ) ) ) | Case No. 09 CV 2046 |
| Plaintiff, | ) ) | Judge Virginia M. Kendall |
| v. | ) ) | Magistrate Judge Nan R. Nolan |
| WALGREEN COMPANY, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST'S MEMORANDUM IN OPPOSITION TO DEFENDANT WALGREEN CO.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

STATEMENT OF FACTS ...................................................................................................1

STANDARD OF REVIEW ..................................................................................................2

ARGUMENT .........................................................................................................................2

I.     Pirelli's Allegations Satisfy Rule 9(b). ...............................................................2

      A.     It Is Irrelevant That Pirelli Did Not Have a Direct, Contractual Relationship with Walgreens; Walgreens Made Misrepresentations to a Third Party On Which Walgreens Knew Pirelli Would Rely. .................................6

      B.     Pirelli Does Not Need to Allege A Verbal Representation Between Walgreens and Pirelli; A Representation Implied by Conduct is Sufficient. ..........8

II.     Pirelli Has Stated a Claim Under the Illinois Consumer Fraud Act. ...................................9

      A.     Pirelli Has Standing Under ICFA. ...........................................................9

      B.     Pirelli Has Stated a Claim Under the Unfairness Prong of ICFA, Which Prohibits Both Fraudulent *and* Unfair Conduct. ....................................................11

III.    In Addition to Pirelli's Claims Under Illinois Law, Under the "Most Significant Relationship" Test, Pirelli's Claims May Be Analyzed Under the Laws of Any States In Which Pirelli Members Purchased Ranitidine or Fluoxetine.............................12

IV.    Plaintiff Has Stated an Independent Claim for Unjust Enrichment...................................14

CONCLUSION.......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ABN AMRO, Inc. v. Capital Intern. Ltd.*,
    595 F.Supp.2d 805 (N.D. Ill. 2008) ................................................................ 15

*Aebischer v. Stryker Corp.*,
    535 F.3d 732 (7th Cir. 2008) .......................................................................... 5

*American Nat. Bank and Trust Co. of Chicago v. Axa Client Solutions, LLC*,
    2002 WL 1008480 (N.D. Ill. May 16, 2002) .............................................. 9, 10

*Aspen Ridge Estates, LLC v. United City of Yorkville*,
    C.A. No. 08-4479, 2009 WL 331520 (N.D. Ill. Feb. 11, 2009)........................ 2

*Athey Prods. Corp. v. Harris Bank Roselle*,
    89 F.3d 430 (7th Cir. 1996) ........................................................................... 9

*Barbara's Sales, Inc. v. Intel Corp.*,
    879 N.E.2d 910 (Ill. 2007) ...................................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ 2

*Blaz v. Michael Reese Hosp. Foundation*,
    191 F.R.D. 570 (N.D. Ill. 1999)...................................................................... 4

*Bridge v. Phoenix Bond & Indem. Co.*,
    128 S. Ct. 2131 (2008)..................................................................................... 7

*Brody v. Finch Univ. of Health Sciences*,
    698 N.E.2d 257 (Ill. Ct. App. 1998) ............................................................. 10

*Cadek v. Great Lakes Dragaway*,
    58 F.3d 1209 (7th Cir. 1995) .......................................................................... 8

*Charles Hester Enters., Inc. v. Illinois Founders Ins. Co.*,
    499 N.E.2d 1319 (Ill. 1986) ..................................................................... 14, 15

*Clinton v. Calvert*,
    No. 87 C 2287, 1987 U.S. Dist. LEXIS 6764 (N.D. Ill. July 16, 1987) ........... 6

*Credit Ins. Consultants, Inc. v. Gerling Global Reins. Corp. of America*,
    210 F. Supp. 2d 980 (N.D. Ill. 2002) ........................................................... 10

*Demitro v. General Motors Acceptance Corp.*,
    902 N.E.2d 1163 (Ill. App. 2009) ................................................................. 11

*Dewan v. Universal Granite & Marble Inc.*,
No. 08 C 350, 2009 WL 590499 (N.D. Ill. Mar. 6, 2009) (Kendall, J.) ........................... 2

*Elder v. Coronet Ins. Co.*,
558 N.E.2d 1312 (Ill. App. Ct. 1990) ................................................................. 7

*El-Maksoud v. El-Maksoud*,
237 N.J. Super. 483 (Ch. Div. 1989) ................................................................. 14

*Emery v. American Gen. Fin., Inc.*,
134 F.3d 1321 (7th Cir. 1998) ........................................................................ 3

*Freeman Indus. LLC v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005) ......................................................................... 15

*Fujisawa Pharmaceutical Co. Ltd. v. Kapoor*,
814 F. Supp. 720 (N.D. Ill. 1993) ................................................................. 2, 5

*Glazewski v. Coronet Ins. Co.*,
483 N.E.2d 1263 (Ill. 1985) ........................................................................ 8, 9

*Harper v. LG Elecs. United States, Inc.*,
595 F. Supp. 2d 486 (D.N.J. 2009) ................................................................. 14

*Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.*,
No. 01 C 3409, 2001 WL 740514 (N.D. Ill. Jun 28, 2001) ........................................... 4, 5

*Hill v. PS Illinois Trust*,
856 N.E.2d 560 (Ill. App. 2006) ..................................................................... 12

*Hodgson v. Man Fin. Inc.*,
No. 06-1944, 2006 U.S. Dist. LEXIS 94307 (E.D. Pa. Dec. 29, 2006) ............................... 14

*Hollymatic Corp. v. Holly Sys., Inc.*,
620 F. Supp. 1366 (N.D. Ill. 1985) ................................................................. 14

*Hutchings v. Tipsword*,
363 S.W.2d 40 (Mo. App. 1962) ....................................................................... 9

*In re Bextra & Celebrex Mktg Sales Practices & Liability Litig.*,
495 F. Supp. 2d 1027 (N.D. Cal. 2007) ............................................................... 10

*In re Cardiac Devices Qui Tam Litig.*,
221 F.R.D. 318 (D. Conn. 2004) ..................................................................... 4, 5

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D Mich. 2000) ................................................................ 15

*In re Grand Theft Auto Video Game Consumer Litig.*,
    No. 06 MD 1739, 2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006)................... 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009) ....................................................................................... 6

*IRN Payment Sys. v. Direct Furniture, LLC*,
    07 C 0141, 2007 WL 2713366 (N.D. Ill. Sept. 12, 2007)................................................ 9

*IWOI, LLC v. Monaco Coach Corp.*,
    581 F. Supp. 2d 994 (N.D. Ill. 2008) ............................................................................ 2

*Leonard v. Springer*,
    64 N.E. 299 (1902).......................................................................................................... 9

*Morrison v. YTB Int'l, Inc.*,
    Nos. 08-565-GPM, 08-579-GPM, 2009 U.S. Dist. LEXIS 66793
    (S.D. Ill. June 5, 2009) ................................................................................................. 3

*Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*,
    578 F. Supp. 2d 1242 (E.D. Cal. 2008)............................................................................ 4

*People ex rel Hartigan v. Knecht Servs., Inc.*,
    575 N.E.2d 1378 (Ill. App. 1991) ................................................................................... 12

*Prime Leasing, Inc. v. Kendig*,
    773 N.E.2d 84 (Ill. App. 2002) ..................................................................................... 10

*Racine Fuel Co. v. Rawlins*,
    36 N.E.2d 710 (Ill. 1941) ............................................................................................... 9

*Ramirez v. Smart Corp.*,
    863 N.E.2d 800 (Ill. App. 2007) ................................................................................... 11

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002) ........................................................................................... 11

*Rohlfing v. Manor Care, Inc.*,
    172 F.R.D. 330 (N.D. Ill. 1997)..................................................................................... 3

*S.C. Johnson & Son, Inc. v. Buske*,
    No. 09-286-GPM, 2009 U.S. Dist. LEXIS 85022 (S.D. Ill. Sept. 17, 2009)..................... 3

*SEC v. Park*,
    99 F. Supp.2d 889 (N.D. Ill. 2000) ............................................................................... 4

*Shannon v. Boise Cascade Corp.*,
    805 N.E.2d 213 (Ill. 2004) ............................................................................................. 7

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
Civil Action No. 04-5898, 2009 U.S. Dist. LEXIS 102087
(E.D. Pa. Nov. 3, 2009) ................................................................................................ 15

*Siegel v. Shell Oil Co.*,
256 F.R.D. 580 (N.D. Ill. 2008) ................................................................................... 13

*Song v. PIL, L.L.C.*,
640 F. Supp. 2d 1011 (N.D. Ill. 2009) ......................................................................... 10

*St. Joseph Hosp. v. Corbetta Const. Co., Inc.*,
21 Ill. App. 3d 925 (Ill. App. 1974) ............................................................................... 7

*Stein v. D'Amico*,
No. 86 C 9099, 1989 U.S. Dist. LEXIS 9511 (N.D. Ill. Aug. 8, 1989) ........................... 7

*Stepan Co. v. Winter Panel Corp.*,
948 F. Supp. 802 (N.D. Ill. 1996) ................................................................................ 10

*Strategic Reimbursement Inc., v. HCA, Inc.*,
2007 U.S. Dist. LEXIS 57052 (N.D. Ill. Aug. 2, 2007) ................................................. 15

*Tanner v. Jupiter Realty Corp.*,
433 F.3d 913 (7th Cir. 2006) ....................................................................................... 13

*U.S. ex. rel. Kennedy v. Aventis Pharmaceuticals, Inc.*,
610 F. Supp. 2d 938 (N.D. Ill. 2009) ............................................................................. 2

*United Sths v. Dial*,
757 F.2d 163 (7th Cir. 1985) .......................................................................................... 9

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs, Inc.*,
536 F.3d 663 (7th Cir. 2008) ....................................................................................... 12

*Zivitz v. Geenberg*,
No. 98 C 5350, 2000 U.S. Dist. LEXIS 1770 (N.D. Ill. Feb. 14, 2000) .......................... 7

**STATUTES**

225 ILCS 85/25 ................................................................................................................. 15

815 ILCS 505, *et seq.* ..................................................................................................... 9, 10

**RULES**

Federal Rule of Civil Procedure 8 *et seq.* ........................................................................... 2

**TREATISES**

Restatement (Second) of Conflict of Laws §148 ........................................................................... 13

Restatement (Second) of Conflicts of Laws §6 ............................................................................ 13

Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefit Trust ("Pirelli") submits this Memorandum in opposition to Defendant Walgreen Co.'s ("Walgreens") Motion to Dismiss the First Amended Complaint [Dkt. 40] ("MTD"). For the reasons set forth herein, Walgreens' MTD should be denied.

## STATEMENT OF FACTS

In the First Amended Complaint ("FAC"), Pirelli continues to rely on the scheme disclosed in the *qui tam* case, *see* FAC ¶¶25-29, but, in order to address the Court's concerns, has significantly enhanced the allegations concerning Pirelli's members' transactions. FAC ¶¶31-36. Exhibit A to the FAC details specific transactions for higher priced ranitidine capsules and fluoxetine tablets at specified Walgreens locations in California, Connecticut, Florida, Illinois, Iowa, Louisiana, and Tennessee. The information provided includes the fill date, the patient co-payment, the portion paid by Pirelli, and the address of the Walgreens location. The FAC also provides the details of three Pirelli members' ranitidine transactions at multiple pharmacies, where the more-expensive capsule formulations are dispensed *only* at Walgreens. FAC ¶35. These detailed allegations demonstrate how Pirelli was harmed by the alleged scheme to fill ranitidine and fluoxetine prescriptions with more expensive formulations.

In addition, the FAC describes the investigation by a large prescription benefits manager ("PBM"), Express Scripts, Inc. ("ESI"), in the wake of *qui tam* settlements. FAC ¶¶30, 43-49. ESI's analysis revealed a ranitidine "capsule-dispensing rate of nearly 97% for Walgreens compared to less than 3% excluding Walgreens, for ESI's book of business during the same time period [*i.e.*, January 2002 through June 30, 2006]. ESI estimated that the substitutions resulted in a potential overpayment of $3,960,000." FAC ¶30 (quoting Declaration of Timothy P. Cody). ESI's analysis is sufficiently similar to the analysis that Pirelli sets forth in the FAC to reasonably infer that Pirelli's payments for the more-expensive ranitidine formulations at Walgreens was a result of the corporate policy (as disclosed by a Walgreen's insider) of switching prescriptions to more expensive forms.

Finally, the FAC includes new allegations concerning how pharmacies make more profits on drugs priced based on average wholesale price ("AWP"), FAC ¶17, how pharmaceutical transactions are electronically adjudicated, *id.* ¶34, the likely documents in Walgreens' exclusive control that would confirm the alleged scheme, *id.* ¶36, and why Pirelli's PBM may have been disincentivized to investigate Walgreens, *id.* ¶42.

## STANDARD OF REVIEW

At the motion to dismiss stage, the Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *Dewan v. Universal Granite & Marble Inc.*, No. 08 C 350, 2009 WL 590499, at *3 (N.D. Ill. Mar. 6, 2009) (Kendall, J.). A plaintiff need only provide a "short and plain statement of the claim" showing that it is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim, but the claim must be supported by facts, that, if taken as true, at least plausibly suggest that it is entitled to relief. *Dewan*, 2009 WL 590499 at *3 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* (*quoting Twombly*, 550 U.S. at 556).

## ARGUMENT

### I. Pirelli's Allegations Satisfy Rule 9(b).

Despite the fact that the FAC includes as much detail as any plaintiff could reasonably be expected to provide prior to discovery, Walgreens continues to maintain that Pirelli fails to satisfy Rule 9(b)'s particularity requirement. Indeed, but for the *qui tam* case, Pirelli would have no reason to suspect that anything was amiss relative to its payments to Walgreens for ranitidine and fluoxetine. Nonetheless, Walgreens' motion to dismiss demands that Pirelli now prove – rather than merely allege – its case.[1] "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Aspen Ridge Estates, LLC v. United City of Yorkville,* C.A. No. 08-4479, 2009 WL 331520, at *2 (N.D. Ill. Feb. 11, 2009) (citations omitted).

> Rule 9(b) is not to be read blindly, but is to be applied in order to effectuate the purposes of the rule which are: (1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations.

*Fujisawa Pharm. Co. Ltd. v. Kapoor,* 814 F. Supp. 720, 726 (N.D. Ill. 1993) (citations omitted); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1004 (N.D. Ill. 2008). Moreover,

---

[1] *Cf. U.S. ex. rel. Kennedy v. Aventis Pharmaceuticals, Inc*., 610 F. Supp. 2d 938, 945 (N.D. Ill. 2009) ("[R]elators do not have to prove [improper charges] in their complaint, and in any event, on a motion to dismiss, a plaintiff is entitled to reasonable inferences from her allegations.").

Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail its claim. *See Emery v. American Gen. Fin., Inc.,* 134 F.3d 1321, 1323 (7th Cir. 1998).

The Court's August 31, 2009 opinion held that the initial complaint "failed to plead with specificity the who, what, where, when and how" needed to satisfy Rule 9(b). Mem. Op. at 10. The Court recognized that the *qui tam* case against Walgreens "helps establish the foundation for Pirelli's argument that Walgreens had a corporate policy of switching dosage forms," but found that "it provides no details to substantiate Pirelli's claim that *it* was defrauded by Walgreens." *Id.* at 8 (emphasis in original). The Court further stated that the initial complaint lacked "any details regarding Walgreens' fraudulent conduct toward Pirelli and fails to identify even one specific fraudulent transaction at a specific Walgreens location involving an identified Walgreens employee." *Id.* As explained below, the FAC remedies the issues identified by the Court to the fullest extent possible prior to conducting discovery.[2]

**<u>Who.</u>** Pirelli has sufficiently alleged Walgreens' *corporate* policy of switching prescriptions for ranitidine and fluoxetine. The Complaint alleges that Walgreens' distribution system and computer system were set up so that any and all Walgreens' pharmacists filling prescriptions for the lower priced formulations would be required to fill them with the higher priced formulations. *See* FAC ¶27. The FAC adds allegations from ESI's investigation that further substantiates the existence of the Walgreens' corporate policy for ranitidine. *See id.* ¶30 ("The analysis indicated a capsule-dispensing rate *of* nearly 97% for Walgreens compared to less than 3% excluding Walgreens, for ESI's book of business during the same time period [*i.e.*, January 2002 through June 30, 2006].") (citation omitted).

At this stage of the case, Pirelli does not (and cannot) identify any particular Walgreens employee involved in the alleged scheme. But Pirelli's allegations still satisfy Rule 9(6) because the necessary "who" for that purpose is the corporate entity – Walgreens. *See Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330, 348 (N.D. Ill. 1997) ("At this stage of the game, we do not believe that the failure to identify particular employee participants has denied the defendants their right to be reasonably 'appraised of the roles they each played in the scheme,' so we conclude that

---

[2] *See Morrison v. YTB Int'l, Inc.*, Nos. 08-565-GPM, 08-579-GPM, 2009 U.S. Dist. LEXIS 66793, at **13-14 (S.D. Ill. June 5, 2009) (finding that claims of statutory consumer fraud were sufficient under Rule 9(b) where the complaint displayed adequate pre-filing investigation and supplied a sketch of the alleged fraudulent scheme and the role each defendant supposedly played in it, and the plaintiffs had pleaded to the limits of their knowledge); *S.C. Johnson & Son, Inc. v. Buske*, No. 09-286-GPM, 2009 U.S. Dist. LEXIS 85022, at **42-43 (S.D. Ill. Sept. 17, 2009) (same).

Rohlfing's complaint passes muster under Rule 9(b).").[3]  In *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318 (D. Conn. 2004), for example, the government accused several hospitals of violating the False Claims Act (FCA) by submitting claims and receiving payments for ineligible hospital services provided to Medicare patients.  In addressing Rule 9(b), the court recognized that "[t]he 'who' in the complaints is the [defendant] hospitals." *Id.* at 337.  "Given the specificity of the remaining information that is provided in the complaints and patient lists, it was not necessary for the Government to identify by name the individuals filling out each claim form." *Id.*  "To the extent that the defendant-hospitals contend that the specific individuals who actually filled out the forms should have been named, several courts have upheld complaints filed under the FCA where they did not identify specific individuals by name." *Id.* at 337 n. 32.[4]

**What.**  The "what" alleged is an unlawful scheme to overcharge TPPs when dispensing generic ranitidine and fluoxetine.  The FAC alleges that Walgreens systematically and unlawfully filled prescriptions by changing the dosage forms, which were subject to strict reimbursement limitations, to a more expensive dosage form not subject to such limitations.  As a result, Pirelli and other third-party payors reimbursed two to four times more than they should have had the prescriptions been filled as written.  FAC ¶¶1, 12-30.

**Where.**  The Court stated that the initial complaint, "fail[ed] to include even a single location where any of the [consumer fraud] statutes were violated."  Mem. Op. at 9.  The FAC has added the details of Pirelli's members' transactions, including the specific Walgreens

---

[3]  *See also Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 574 (N.D. Ill. 1999) ("Here, the institutional identity of the caller, *viz.* that she was from Michael Reese, is what matters. Michael Reese and not she is a defendant in this case, and there is no question but that she was acting for Michael Reese. Because [plaintiff] has pled the 'who' (Michael Reese), and the other elements are not in dispute, and are in any case satisfied, he has met the requirement of Rule 9(b)."); *Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.*, No. 01 C 3409, 2001 WL 740514, at *3 (N.D. Ill. Jun 28, 2001) ("Heller Bros.' complaint does not implicate individual Leggett employees.  Leggett is the sole defendant.  Under these circumstances, Heller Bros. provides sufficient 9(b) notice by identifying the individuals making the misrepresentations as Leggett employees."); *see also Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 578 F. Supp. 2d 1242, 1249 (E.D. Cal. 2008).

[4]  Also, while Walgreens complains that Pirelli has not provided the names of its members who filled prescriptions for the more expensive formulations, this is immaterial for Rule 9(b) purposes.  *Cf. SEC v. Park,* 99 F. Supp.2d 889, 901 (N.D. Ill. 2000) ("[I]t is sufficient to identify those defrauded as subscribers or Societe Anonyme members as the allegations still 'reasonably notify the defendants of their purported role in the scheme.'") (citations omitted).

locations in California, Connecticut, Florida, Illinois, Iowa, Louisiana and Tennessee where the prescriptions were filled. FAC ¶¶31-36 & Ex. A.[5]

**When.** The FAC continues to allege a Class Period of July 1, 2001 through 2005, FAC ¶¶26, 50, which was the period the *qui tam* case involved. *See* US DOJ June 4, 2008 Press Release (attached as Exhibit A).[6] However, the FAC has added the dates of specific transactions during this period where Pirelli itself paid for the more expensive formulations of ranitidine and fluoxetine. FAC ¶¶31-36 & Ex. A. *Cf. In re Cardiac Devices*, 221 F.R.D. at 337 ("The 'when' of the false claim is sufficiently identified or ascertainable based upon the dates of the patients' hospitalizations or the year of the annual cost report was filed.") (footnote omitted).

**How.** The FAC alleges that Walgreens' computer system was set up so that it was difficult or impossible to fill prescriptions for dosage forms that were subject to MACs and quotes specific allegations from the *qui tam* case about how that was accomplished. *See* FAC ¶27. After the settlement of a *qui tam* case against a different pharmacy, ESI began an investigation of ranitidine prescriptions and found that the more-expensive capsules were *almost always* dispensed by Walgreens, but *rarely* dispensed by other pharmacies. *Id.* ¶¶28-29.[7] Pirelli alleges how the scheme caused it to pay for more expensive formulations when its members filled their prescriptions at Walgreens. FAC ¶¶31-36 & Ex. A.

Walgreens also dissects the alleged examples and concludes that because Pirelli only *suspects* that the prescriptions have been switched, but has not ruled out other possibilities, the

---

[5] Defendant asserts that there is no private right of action under the Iowa consumer protection laws, MTD at 6, but Pirelli does not assert such a claim. *See* FAC ¶61. The Iowa transaction nevertheless remains material for purposes of alleging Walgreens' corporate policy of switching ranitidine prescriptions to more expensive formulations.

[6] *See Fujisawa,* 814 F. Supp. at 726 ("[W]here fraud allegedly occurred over a period of time, the requirements of 9(b) are less stringently applied."); *Heller Bros.,* 2001 WL 740514, at *3 ("Heller Bros. identifies the general time frame in which the alleged misrepresentations occurred. This is sufficient for . . . Rule 9(b).").

[7] Walgreens states that ESI's investigation into ranitidine prescription switching following a *qui tam* settlement involving *Omnicare* in November 2006 (FAC ¶ 43) was sufficient to put Pirelli on notice of similar claims against *Walgreens*. MTD at 9 n.2. A fair reading of the FAC, including the allegations specifically addressed to the discovery rule and equitable tolling (FAC ¶¶ 37-49), does not support such a conclusion. *See also Aebischer v. Stryker Corp.*, 535 F.3d 732, 734 (7th Cir. 2008) ("Usually the date on which a plaintiff receives inquiry notice is a fact question for the jury.").

FAC is insufficiently particular. MTD at 4-6.[8] However, the sum of allegations make it plausible (if not probable, which is not required) that Walgreens switched at least some of the prescriptions pursuant to its corporate policy. While the details of Pirelli's transactions, standing alone, may not prove its case, the allegations when coupled with the revelations of the *qui tam* case and the ESI investigation are sufficient to proceed to the next phase of litigation.[9] Actual proof is not necessary at this stage of the case, but the allegations demonstrate a reasonable basis for Pirelli to suspect that it has overpaid Walgreens and that discovery will support its claims.

Walgreens' contention that "Pirelli has simply not checked with consumers (its members) who actually filled their prescriptions at Walgreens," MTD at 5, is misplaced, as Pirelli's members are not parties to this action. In essence, Walgreens contends that Pirelli must conduct discovery (of personal medical information) before even attempting to plead its case. But this is an evidentiary, not a pleading, matter. In any event, the details of Pirelli's members' transaction have been alleged and, at this stage, Walgreens itself is more likely to have access to prescription information than individual patients.[10]

### A. It Is Irrelevant That Pirelli Did Not Have a Direct, Contractual Relationship with Walgreens; Walgreens Made Misrepresentations to a Third Party On Which Walgreens Knew Pirelli Would Rely.

Walgreens argues Pirelli's claims under state consumer protection statutes must fail because "Walgreens never directed any communications to Pirelli and, in fact never did business with Pirelli." MTD at 7. This precise argument was rejected in *Shannon v. Boise Cascade*

---

[8] Walgreens contends that Pirelli's allegations are "undermined" by transactions at Caremark in Example 2 that show high prices for tablets. MTD at 5. This contention fails to construe the FAC in the light most favorable to Plaintiff and is wrong for at least two reasons. First, despite no apparent price savings in the Caremark transactions, it remains consistent that all of this patient's prescriptions filled a pharmacies other than Walgreens were filled with tablets. Second, Walgreens ignores *sixteen* other transactions that show substantial price savings to Pirelli on tablets. FAC ¶ 35(b).

[9] "We do not examine each allegation in a complaint to see if it stands or falls by itself. We look at the entire complaint to determine whether it adequately alleges fraud." *Clinton v. Calvert*, No. 87 C 2287, 1987 U.S. Dist. LEXIS 6764, at ** 15-16 (N.D. Ill. July 16, 1987).

[10] Walgreens' presumption that Pirelli will attempt to prove its case by reviewing the actual prescription of every person that was provided one of the expensive formulations at Walgreens is also misplaced. The primary focus of Pirelli's discovery efforts will be the alleged corporate policy that made it difficult or impossible to fill prescriptions with MAC-priced generics. *See* FAC ¶36 (describing documents that might reflect Walgreens' conduct). If this discovery effort proves successful, Pirelli will be able to prove damages on an aggregate basis. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir. 2009) ("The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself.") (citation omitted).

*Corp.*, 805 N.E.2d 213, 218 (Ill. 2004). Traditional privity is not a requirement under ICFA (just like it is not a requirement for common law fraud in Illinois); instead, the issue is whether the misconduct at issue "proximately caused" the plaintiff's damages, and proximate cause does not always require a direct relationship:

> Although proof of actual deception is required, this is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy proximate cause under the Act. For instance, if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably occurred 'as a result of' the indirect deception, as required by section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2000)). In those circumstances, the purchaser, who may have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the architect or contrary, who reasonably should have had correct knowledge. 805 N.E.2d at 218.

The "plain language of the [Consumer Fraud] Act establishes that any person who suffers damage as a result of any other person's unfair practice or deception in the sale or distribution of any services may bring an action for actual damages or for any other relief which the court deems proper. This statutory language is extremely broad, and the supreme court has stated that 'this broad language evidences an intent that the Act have a correspondingly broad applicability.'" *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1319-20 (Ill. App. Ct. 1990). In *Elder*, the Appellate Court held that an insured could state a claim against a third party claims processor for the insurance company even where the plaintiff did not have a direct relationship with the claims processor because the insurance company and its claims processor had a "policy and practice of denying claims" in an unfair manner. *Id.* at 1320. Similarly, here, while the agency relationship is on plaintiff's side of the transaction, even if the Court determines that Walgreens dealt directly with Pirelli's agent, ICFA provides a cause of action for Pirelli. *See also Zivitz v. Geenberg*, No. 98 C 5350, 2000 U.S. Dist. LEXIS 1770, at *13 (N.D. Ill. Feb. 14, 2000) (alleged indirect misrepresentation that could reasonably be expected to be communicated to plaintiffs by the third party sufficient to survive a motion to dismiss); *Stein v. D'Amico*, No. 86 C 9099, 1989 U.S. Dist. LEXIS 9511, at *7 (N.D. Ill. Aug. 8, 1989) ("In Illinois privity is not a prerequisite to recovery in fraud cases.") (*citing St. Joseph Hosp. v. Corbetta Const. Co., Inc.*, 21 Ill. App. 3d 925 (Ill. App. 1974) (collecting cases)).

As the Supreme Court recently held in *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2144 (2008), where it looked to common law to interpret the scope of the RICO:

> [W]hile it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it. The Restatement provision cited by petitioners certainly does not support that proposition. It provides only that the plaintiff's loss must be a foreseeable result of someone's reliance on the misrepresentation. It does not say that only those who rely on the misrepresentation can suffer a legally cognizable injury. *And any such notion would be contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation.* (Emphasis added.)

Likewise, in this case, Pirelli was injured by Walgreens even though it was its PBM that dealt directly with Walgreens.

### B. Pirelli Does Not Need to Allege A Verbal Representation Between Walgreens and Pirelli; A Representation Implied by Conduct is Sufficient.

Moreover, Pirelli has made allegations sufficient to infer a misrepresentation by conduct because it has alleged that each time one of its members filled a prescription for ranitidine or fluoxetine at a Walgreens pharmacy, Walgreens represented that the amount claimed was for the drug dosage form actually prescribed by the Pirelli member's physician. FAC ¶32.

The Seventh Circuit has recognized misrepresentation by conduct where underlying state law recognizes such claims. *Cadek v. Great Lakes Dragaway*, 58 F.3d 1209, 1211 (7th Cir. 1995). In *Cadek*, the plaintiff raced cars on the defendant's race track, where the defendant kept a fire truck parked in plain sight. 58 F.3d at 1210. When Plaintiff's car was involved in a collision that caused it to become engulfed in flames, defendant's fire truck was unmanned and nonfunctional. *Id.* That the truck was manned and the extinguishers filled in case of emergency was, according to the defendant in that case, "mere inference," and did not constitute a misrepresentation of fact. *Id.* at 1211. The court rejected this "very silly argument," noting that, "under Wisconsin law, conduct can constitute a misrepresentation of fact." *Id.*

The Illinois Supreme Court has likewise held that "[a] representation may be made by words, or by actions or other conduct amounting to a statement of fact." *Glazewski v. Coronet Ins. Co.*, 483 N.E.2d 1263, 1266 (Ill. 1985).[11] To establish the element of a misrepresentation of

---

[11] In *Glazewski*, the court held that the plaintiffs had adequately alleged *misrepresentation by conduct*, where they had alleged that the mere act, by the defendant, of issuing an insurance policy amounted to a representation that the policy was of some value. Likewise, "[a] president of a corporation who personally issues stock represents *by his conduct* that the stock is valid," 483 N.E.2d at 1266 (emphasis

fact, under ICFA or common law fraud, "a misrepresentation need not be made by means of conversations between the parties." *Leonard v. Springer*, 64 N.E. 299, 301 (Ill. 1902). Instead "[a]ny conduct capable of being turned into a statement of fact is a representation. *There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts.* It is sufficient that there were acts such as to mislead a reasonably cautious or prudent man in regard to the existence of a fact forming a basis of or contributing an inducement to some change of position by him.'" *Id.* at 301. *See also IRN Payment Sys. v. Direct Furniture, LLC*, 07 C 0141, 2007 WL 2713366, at *4 (N.D. Ill. Sept. 12, 2007) ("silence accompanied by deceptive conduct or suppression of material facts results in active concealment and that failure to disclose material information may be considered a false statement of material fact for the purpose of pleading the first element of the common-law fraud") (citation and quotations omitted); *Racine Fuel Co. v. Rawlins*, 36 N.E.2d 710, 712 (Ill. 1941) ("The rule is that transactions are presumed to be fair and honest," and "[a]ny conduct capable of being turned into a statement of fact is a representation").

## II.      Pirelli Has Stated a Claim Under the Illinois Consumer Fraud Act.

### A.      Pirelli Has Standing Under ICFA.

In a single sentence, Walgreens states that Pirelli cannot sue under ICFA because Pirelli is not a consumer. MTD at 8. Walgreens is wrong. Relief under ICFA is not limited to "consumers," but rather is available to "[a]ny *person* who suffers actual damages as a result of a violation of" ICFA. 815 ILCS 505/10a(a) (emphasis added). To have standing under ICFA, the plaintiff need only allege a "consumer nexus," *i.e.,* "(1) the complaint about conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns *or* (2) it was acting as a consumer of the defendant and the fraudulent conduct [or unfair practice] amounted to more than a mere breach of contract." *American Nat. Bank and Trust Co. of Chicago v. Axa Client Solutions, LLC*, 2002 WL 1008480, 4 (N.D. Ill. May 16, 2002) (emphasis added); *see also Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996). "In interpreting these elements and [plaintiff's] allegations, the court must keep

---

added), . . . and "a person who trades in commodities represents that the trades are backed by cash or a margin account," merely by his act of trading." *Id.* (citation omitted).

in mind that the ICFA is to be construed liberally." *American National Bank*, 2002 WL 1008480 at 4.[12]

In this case, Pirelli meets both tests. First, Pirelli is a "consumer" of prescription drugs sold by Walgreens. The Act defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). The Act defines a "person" as "any … association, and any agent [or] member thereof." 815 ILCS 505/1(c). Here, Pirelli is a consumer because it pays for drugs purchased by its members to be used for household purposes. For example, in *In re Bextra & Celebrex Mktg Sales Practices & Liability Litig.*, 495 F. Supp. 2d 1027, 1032 (N.D. Cal. 2007), the court held that TPPs such as Pirelli may have standing to bring suit under a state's consumer protection laws, provided that such plaintiffs meet the specific standing requirements of the applicable statute. Walgreens' reliance on *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 95 (Ill. App. 2002) is misplaced because the plaintiffs there were a provider of financial services and a stock brokerage firm.

Furthermore, even if the allegations of the FAC did not establish Pirelli as a "consumer," it still has standing under ICFA because Walgreens' conduct implicates consumer protection concerns. In *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 806 (N.D. Ill. 1996), this Court explained a commercial entity who is not a consumer may still have standing where "'the alleged conduct invokes trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" Here, there are such concerns because Walgreens' conduct not only affected all similarly-situated TPPs, but also affected Pirelli's members (who are clearly consumers under the Act) because their prescriptions were changed without authorization. "While the scope of what constitutes consumer protection concerns is under debate, courts have generally required some allegation of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues." *Credit Ins. Consultants, Inc. v. Gerling Global Reins. Corp. of America*, 210 F. Supp. 2d 980, 985 (N.D. Ill. 2002). In this case, Walgreens switched prescription dosages so that it could charge the TPPs a higher price. This misconduct implicated public health and safety issues.

---

[12] The purpose of the "consumer nexus" test is to prevent breach of contract claims from being converted into ICFA claims. *See*, *e.g.*, *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1018 (N.D. Ill. 2009); *Brody v. Finch Univ. of Health Sciences*, 698 N.E.2d 257, 269 (Ill. Ct. App. 1998).

### B. Pirelli Has Stated a Claim Under the Unfairness Prong of ICFA, Which Prohibits Both Fraudulent *and* Unfair Conduct.

Although Walgreens ignores the allegation, the FAC alleges that Walgreens' conduct was unfair. *Id.* ¶61(9). In determining whether conduct is "unfair," three factors are considered: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). All three factors need not be met. Rather, the "correct standard" is that "a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotations omitted). Further, these factors are to be construed consistent with "the requirement that the Consumer Fraud Act be construed liberally to promote its purpose." *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 812 (Ill. App. 2007).

In this case, Walgreens' conduct satisfies all three prongs such that, whether viewed in isolation in conjunction, "unfair" conduct is alleged. In the context of a complex prescription billing system, Walgreens surreptitiously switched prescriptions so that it could charge higher prices to those who paid for the lion's share of the prescriptions. This offends public policy and is immoral, unethical and unscrupulous because, at its heart, it is sneaky and dishonest. Moreover, this conduct is "oppressive" because the manner in which the overcharges were perpetrated leaves the consumer with virtually no ability to detect the fraud (absent a whistleblower from Walgreens stepping forward). Finally, the conduct causes substantial injury to those who must pay for prescription drugs because it results in higher charges for medical prescriptions and thus higher costs for health care. In *Ramirez,* for example, the court sustained an "unfair practices" claim that involved "a uniform billing practice that, at this stage of the proceeding, has the potential to be unethical and offend public policy" because the defendant caused patients to believe they were "being charged for important services provided, when they are not" and that they were being charged for "the actual cost of certain services … although defendant charged amounts far in excess of the actual costs of such services." *Id*. at 812.

Settled Illinois precedent teaches that a claim of "unfair conduct" under ICFA does not require any allegation of deception of fraud. *See Robinson*, 775 N.E.2d at 960 ("Recovery may be had for unfair as well as deceptive conduct."); *Demitro v. General Motors Acceptance Corp.*, 902 N.E.2d 1163, 1168 (Ill. App. 2009) ("A plaintiff may allege that conduct is 'unfair' under the Consumer Fraud Act without alleging that it was deceptive."); *Hill v. PS Illinois Trust*, 856

N.E.2d 560, 568 (Ill. App. 2006) (same); *People ex rel Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1385 (Ill. App. 1991) (sustaining plaintiff's separate claims of "unfair" conduct and "deceptive" conduct and noting that "a practice may be unfair without being deceptive"). In addition, *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs, Inc.*, 536 F.3d 663 (7th Cir. 2008), addressed Illinois precedent establishing a separate cause of action for "unfair" conduct under the Act and held, "[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Id*. at 670. Importantly, the Seventh Circuit held that Rule 8(a) applied even though part of the plaintiff's claim for "unfair practices" involved deception. *Id*. at 672 (unfair conduct claim alleged "false advertisements").

Furthermore, a plaintiff need not choose between a claim for "unfair" practices or "deceptive" practices. The two are not mutually exclusive. In *Knecht Services*, 575 N.E.2d at 1385-87, for example, the plaintiff prevailed in establishing both types of claims under ICFA. The defendant engaged in "unfair" conduct by charging unconscionably high prices, including for services that were unnecessary or not rendered, and thus offended public policy. *Id*. at 1387. The defendant also engaged "deceptive" practices because it advertised that its services were offered at a "minimum charge" when they were not. *Id*. at 1388. Like the *Knecht Services* defendant, Walgreens engaged in both "unfair" (by filling prescriptions for dosage forms that were not prescribed) and "deceptive" conduct (by charging TPPs for the higher-priced dosage form while concealing the fact that it had switched dosage forms).

## III. In Addition to Pirelli's Claims Under Illinois Law, Under the "Most Significant Relationship" Test, Pirelli's Claims May Be Analyzed Under the Laws of Any States In Which Pirelli Members Purchased Ranitidine or Fluoxetine.

Walgreens continues to insist that Pirelli has not alleged where it personally suffered injury. MTD at 7. From the very beginning, however, Pirelli has alleged that it "was injured by Defendant's conduct alleged herein because it reimbursed for purchases of the generic drugs at issue in this case in California, Connecticut, Florida, Illinois, Iowa, Louisiana and Tennessee at prices higher than the Maximum Allowable Costs ('MAC') prices for alternative formulations of those drugs." FAC ¶5. Contrary to Walgreens' analysis, which focuses on Illinois or Tennessee law alone, under Illinois choice of law principles, the Court may analyze Pirelli's claims under the laws of any of these states.

"When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's law governs the proceeding." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Illinois has eliminated the place-of-the-injury rule in favor of the approach found in the Second Restatement, Conflict of Laws, under which the law that governs is that of the jurisdiction which has the "most significant relationship" to the occurrence and the parties. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007) (citations omitted). As the Illinois Supreme Court explained in *Barbara's Sales*, "Section 6 of the Restatement sets forth seven elementary principles for choice-of-law determinations,"[13] but, as these general principles "leave the answer to specific problems very much at large," other sections of the Restatement provide "secondary statement[s] in black letter setting forth the choice of law rules in a given situation." 879 N.E.2d at 920 (quotations and citations omitted).

For example, Illinois courts follow Restatement §148 to determine the law that will apply to "actions brought to recover pecuniary damages suffered on account of false representations, whether fraudulent, negligent or innocent." *Barbara's Sales*, 879 N.E.2d at 922. According to that section, where a plaintiff relies on a representation in the same state where it was made and received, the law of that state applies. *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008). However, "[w]hen the plaintiff's action in reliance took place in whole or in part in a state *other than* that where the false representations were made," the following factors will be considered: (a) the state where plaintiff acted in reliance upon defendant's representations, (b) the state where plaintiff received the representations, (c) the state where defendant made the representations, (d) the domicile, residence, place of incorporation, and place of business of the parties, and (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time. *Barbara's Sales*, 879 N.E.2d at 922 (*quoting* Restatement (Second) of Conflict of Laws §148) (emphasis added).

Here, Pirelli will likely be found to have relied on Walgreens' misrepresentations at its principal place of business, in Tennessee, but Walgreens made those misrepresentations at its individual pharmacies when it electronically submitted claims for ranitidine and fluoxetine to

---

[13] They are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Restatement (Second), Conflicts of Laws §6; *Barbara's Sales*, 879 N.E.2d at 920.

Pirelli's PBM for reimbursement. *See* FAC ¶32. Because the misrepresentations were relied on in a different state than they were made, the full list of factors set out above must be considered. In *Barbara's Sales*, the Illinois Supreme Court explained that "[t]he general approach to section 148 is found in comment j," which states that "[i]f any two of the contacts, apart from the defendant's place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Id.* at 923-4. Here, Pirelli has sufficiently alleged not only that Walgreens made misrepresentations at the individual pharmacies specified, but also that the tangible things which are the subject matter of the transactions, the prescriptions, are located there as well, making the laws of each of the states where Pirelli reimbursed for these drugs the governing law.

Plaintiffs anticipate that Walgreens will argue the facts alleged in the FAC do not support this choice of law determination. Due to the very fact-intensive nature of a choice of law determination under the "most significant relationship" test, however, this Court should not resolve this issue on a motion to dismiss. *See Hollymatic Corp. v. Holly Sys., Inc.*, 620 F. Supp. 1366, 1371 (N.D. Ill. 1985) (sustaining counterclaim even though it did not apprise the court of essential facts necessary to make a reasoned choice of law analysis and noting that "a more searching examination of the applicable law, whatever it may be, is in order," and "[d]iscovery may fill out the missing facts, allowing the claim asserted to stand or fall on that basis.").[14]

## IV.    Plaintiff Has Stated an Independent Claim for Unjust Enrichment.

The Court previously dismissed Pirelli's unjust enrichment claim because it had failed to sufficiently plead elements of fraud and, according to the Court, unjust enrichment "must rest upon some underlying fraudulent conduct." Mem. Op. at. 13. Walgreens argues this claim should again be dismissed for the same reason. MTD at 12. Many types of "wrongful conduct" are sufficient to state a claim for unjust enrichment under Illinois law. As the Illinois Supreme Court has stated, "[a] constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct." *Charles Hester Enters., Inc. v. Illinois Founders Ins. Co.*, 499 N.E.2d 1319, 1326 (Ill. 1986). "Some form of wrongful or

---

[14]    Courts in other states that have adopted the "most significant relationship" test or similarly fact-intensive choice of law tests, have also reached this conclusion. *See Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (New Jersey); *Hodgson v. Man Fin. Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at **4-5 (E.D. Pa. Dec. 29, 2006) (Pennsylvania); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739, 2006 U.S. Dist. LEXIS 78064, at *11 n.3 (S.D.N.Y. Oct. 25, 2006) (nationwide class action); *El-Maksoud v. El-Maksoud*, 237 N.J. Super. 483, 491 (Ch. Div. 1989).

unconscionable conduct is a prerequisite to the imposition of a constructive trust." *Id*. In this case, Walgreens switched prescriptions in violation of state law and in a manner that it knew would cause Pirelli to mistakenly pay more than it was obligated to pay. *See, e.g*, 225 ILCS 85/25.

Moreover, Pirelli's unjust enrichment claim is not dependent upon its ICFA claim and may proceed even if Pirelli has not sufficiently pled fraud under ICFA. *See ABN AMRO, Inc. v. Capital Intern. Ltd.*, 595 F.Supp.2d 805, 850 (N.D. Ill. 2008); *Strategic Reimbursement Inc., v. HCA, Inc.,* 2007 U.S. Dist. LEXIS 57052 (N.D. Ill. Aug. 2, 2007); *see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, C.A. No. 04-5898, 2009 U.S. Dist. LEXIS 102087, at *40 (E.D. Pa. Nov. 3, 2009). *Cf. In re Cardizem CD Antitrust Litig.,* 105 F. Supp. 2d 618, 668-671 (E.D Mich. 2000) (sustaining unjust enrichment claims and holding, after analysis of various state laws including Illinois that "[t]he authority Defendants rely upon fails to support their position that the success of Plaintiffs' common law unjust enrichment claims necessarily depends upon the success of their statutory claims.").[15]

## <u>CONCLUSION</u>

For all of the reasons set forth above, Pirelli respectfully requests that this Court DENY Walgreens' motion to dismiss.

Dated: November 12, 2009

<div style="margin-left:40%">

PLAINTIFF PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, individually and on behalf of others similarly situated,

By: /s/ Jennifer Fountain Connolly
    Kenneth A. Wexler
    kaw@wexlerwallace.com
    Jennifer Fountain Connolly
    jfc@wexlerwallace.com
    Wexler Wallace LLP
    55 W. Monroe Street, Suite 3300
    Chicago, IL  60603
    (312) 346-2222 – Telephone
    (312) 346-0022 – Facsimile

</div>

---

[15] Similarly, the Tennessee Supreme Court recently reaffirmed that a claim of unjust enrichment is available where the defendant engaged in "inequitable" conduct. *See Freeman Indus. LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005).

Patrick E. Cafferty
pcafferty@caffertyfaucher.com
Dom J. Rizzi
drizzi@caffertyfaucher.com
Anthony F. Fata
afata@caffertyfaucher.com
Cafferty Faucher LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL  60602
(312) 782-4880 – Telephone
(312) 782-4485 – Facsimile

George E. Barrett
gbarrett@barrettjohnston.com
Gerald E. Martin
jmartin@barrettjohnston.com
David W. Garrison
dgarrison@barrettjohnston.com
217 Second Avenue North
Nashville TN  37201
(615) 244-2202 – Telephone
(615) 252-3798 – Facsimile

**Counsel for Plaintiff**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused a copy of the foregoing ***Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust's Memorandum in Opposition to Defendant Walgreen Co.'s Motion to Dismiss the First Amended Complaint*** to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system. Those attorneys not registered with the Court's electronic filing system will be served via First Class U.S. Mail, with proper postage prepaid, this 12th day of November, 2009.

/s/ Jennifer Fountain Connolly
Jennifer Fountain Connolly

17