IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PIRELLI ARMSTRONG TIRE CORPORATION, )
RETIREE MEDICAL BENEFITS TRUST )
individually and on behalf of others similarly )
situated, )                                     Case No. 09 C 2046
                                               )
                          Plaintiffs, )         Judge Virginia M. Kendall
          v.                                   )
                                               )
WALGREEN CO., )
                                               )
                          Defendant. )

## MEMORANDUM OPINION & ORDER

Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli") filed

a class-action complaint against Defendant Walgreen Company ("Walgreens"), individually and on

behalf of all others similarly situated, alleging unjust enrichment (Count I) and violation of thirty-

five state consumer protection statutes (Count II). After the Court dismissed Pirelli's original

complaint, Pirelli filed its First Amended Class Action Complaint ("Amended Complaint").

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) ("Rule 12(b)(6)" and "Rule 9(b)"),

Walgreens moves this Court to dismiss Pirelli's Amended Complaint. For the reasons stated below,

the Court grants Walgreens' Motion to Dismiss.

## BACKGROUND

The following facts are taken from Pirelli's Amended Complaint and are accepted as true

for the purposes of deciding this Motion to Dismiss. *See Moranski v. GMC*, 433 F.3d 537, 539 (7th

Cir. 2005). Pirelli is a voluntary employee benefits association maintained under the Employment

Retirement Income Security Act, 29 U.S.C. §§ 1132, *et seq.*, that provides health and medical benefits to participants and their beneficiaries. Amend. Compl. ¶ 5. Walgreens is an Illinois corporation that operates approximately 7,000 retail pharmacies. Amend. Compl. ¶ 6. As a third-party payor ("TPP"), Pirelli reimburses pharmacies like Walgreens for prescription drugs purchased by plan participants and their beneficiaries. Amend. Compl. ¶ 1. Pirelli alleges that Walgreens engaged in an unlawful scheme to overcharge TPPs when dispensing generic versions of ranitidine HCI ("ranitidine") and fluoxetine hydrochloride ("fluoxetine"). Amend. Compl. ¶ 1.

## I.      Pirelli's Allegations Retained from Original Complaint

When a generic drug is found to be bioequivalent to a brand-name drug, the FDA assigns it an "AB" rating, and it can be used interchangeably with the brand-name drug. Amend. Compl. ¶¶ 8, 10. Because of the differences in form and administration schedules between capsules and tablets, however, pharmacists may never substitute a capsule version of a drug with the tablet form, or vice versa. Amend. Compl. ¶ 11. Between 2001 and 2005, Walgreens filled prescriptions for the tablet form of certain drugs with the capsule form and filled prescriptions for the capsule form with the tablet form. Amend. Compl. ¶ 1. As a result of these substitutions, Pirelli and other TPPs reimbursed Walgreens two to four times more than they would have if the prescriptions were filled as written. Amend. Compl. ¶ 1.

This reimbursement rate is the primary source of dispute between Pirelli and Walgreens. Individuals with private insurance through a TPP like Pirelli only pay a flat or percentage "co-pay" for prescription drugs and the remainder is paid by the TPP. Amend. Compl. ¶ 12. While pharmacies determine what price they charge insured customers, the reimbursement rate is generally established by pharmacy benefit managers ("PBMs") acting on behalf of TPPs. Amend. Compl. ¶

13.  The reimbursement rate almost universally consists of the ingredient cost portion and the dispensing fee.  Amend. Compl. ¶ 14.  The ingredient cost for most generic drugs is based on a Maximum Allowable Cost ("MAC") determined by a TPP or PBM as the most they will reimburse the pharmacy for that drug.  Amend. Compl. ¶ 15.  The MAC is determined by gathering the prices of each manufacturer's version of a generic drug and using a formula based on Average Wholesale Price ("AWP").  Amend. Compl ¶ 17.  The AWP, published by drug manufacturers, is the standard benchmark for reimbursement of brand-name drugs, but it is only used to determine the reimbursement rate of generic drugs when there is no MAC price available.  Amend. Compl ¶ 17.  Pharmacies tend to earn greater profits selling generic drugs that are priced based on AWP as opposed to those subject to MAC limitations.  Amend. Compl. ¶ 18.

During the relevant period, Pirelli's PBM established the reimbursement rate for generic drugs at AWP-14% plus a $2.50 dispensing fee or MAC plus a $2.50 dispensing fee, whichever was applicable, for certain plan beneficiaries, and AWP-35% plus a $1.90 dispensing fee or MAC plus a $1.90 dispensing fee, whichever was applicable, for other plan beneficiaries.  Amend. Compl. ¶ 20.  Ranitidine is usually manufactured and marketed in tablet form, while fluoxetine is generally manufactured and marketed in capsule form.  Amend. Compl. ¶¶ 21, 23.  Because ranitidine capsules and fluoxetine tablets were produced by so few manufactures and rarely prescribed, MACs were not adopted for these drugs in those respective forms.  Amend Compl. ¶¶ 22, 24.  Absent a MAC, reimbursement for the drugs in these forms generally involves the application of an AWP-based formula, resulting in a higher reimbursement rate.  Amend Compl. ¶¶ 22, 24.

Pirelli alleges that Walgreens' corporate policy was to systematically change prescriptions written for dosage forms that were subject to MAC reimbursement limits, enabling Walgreens to evade the MACs and take advantage of the pricing differential between the tablet and capsule forms. Amend. Compl. ¶ 26. Pirelli claims that Walgreens pharmaceutical distribution system was set up so that it was difficult to fill prescriptions in dosage forms that were subject to MACs. Amend. Compl. ¶ 27. In support of its allegation, Pirelli cites to testimony by a former Walgreens pharmacist in a *qui tam* action ("the *qui tam* case") claiming that: 1) Walgreens personnel filled orders for ranitidine tablets with capsules; 2) Walgreens' pharmaceutical dispensing computer system allowed pharmacists to switch dosage forms; and 3) pharmacists regularly did this without obtaining the legally required physician's authorization. Amend. Compl. ¶ 27 (citing *United States of America ex rel. Bernard Lisitza v. Walgreen Co.*, No. 03-C-744 (N.D. Ill.)).

Pirelli claims that on several occasions it reimbursed Walgreens for the more expensive dosage form when the less expensive form was available. Amend. Compl. ¶ 35. One Pirelli member's prescription history from November 2001 to May 2005 shows that the reimbursement rate charged to Pirelli by Walgreens for ranitidine was at least $68.79, while Pirelli paid no more than $14.97 to other pharmacies. Amend. Compl. ¶ 35. Although the reimbursement rate paid by Pirelli to Walgreens was substantially higher for ranitidine, the individual patient's co-payment remained constant, ranging from $8-$10 during the period in question. Amend. Compl. ¶ 35. On June 4, 2008, the *qui tam* case was unsealed and Pirelli learned of Walgreens practice of switching dosage forms. Amend. Comp. ¶ 37. Ten months later, Pirelli filed its initial class action complaint against Walgreens in this case. Walgreens filed a timely Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b). The Court dismissed Pirelli's original complaint without prejudice for failure to state a

claim on which relief could be granted, finding that the consumer fraud allegations failed to meet the heightened pleading requirements of Rule 9(b) and that the unjust enrichment claim could not survive without an underlying fraud claim. On September 29, 2009, Pirelli filed an Amended Complaint with a series of exhibits appended.

## II.    Additional Facts in Pirelli's Amended Complaint

Pirelli has reproduced most of its original complaint in its Amended Complaint, making a few notable changes. The Amended Complaint drops all allegations with respect to selegiline, instead stating claims based solely on Walgreens' conduct with respect to fluoxetine and ranitidine. Amend. Compl. ¶ 1. The Amended Complaint also explains that pharmacies like Walgreens make a greater profit on generic drugs priced based on AWPs than generics priced based on MACs because MACs are determined based on actual prices in the marketplace, while AWPs are benchmark prices that often bear no resemblance to prices in the marketplace. Amend. Compl. ¶ 17.

The Amended Complaint then provides some additional details about transactions by Pirelli members during the Class Period. Exhibit A to the Amended Complaint contains a table setting out a series of transactions by Pirelli members at various Walgreens locations. Amend. Compl. Ex. A. For each transaction, Pirelli provides (1) the member ID, (2) the fill date, (3) the drug dispensed, (4) the quantity, (5) the co-pay by the Pirelli member, (6) the portion paid by Pirelli, and (7) the location of the Walgreens where the transaction took place. Amend. Compl. Ex. A. The Amended Complaint then adds two additional examples of Pirelli's members' transactions during the Class Period. One member's transactions from July 1, 2000 through December 15, 2003 show that a Walgreens in River Ridge, Louisiana charged Pirelli at least $42.80 and as much as $74.81 for a set

quantity of ranitidine while other pharmacies charged Pirelli between $0.75 and $49.13. Amend. Compl. ¶ 35. Another member's transactions between July 25, 2000 and December 30, 2002 show that a Walgreens in Des Moines, Iowa charged Pirelli $51.44 for a set quantity of ranitidine, while other pharmacies charged no more than $14.37 for the same quantity. Amend. Compl. ¶ 35. While Walgreens dispensed ranitidine capsules to the Pirelli members whose transactions appear in the Amended Complaint, the other pharmacies dispensed ranitidine tablets. Amend. Compl. ¶ 35. Pirelli admits that it does not have the prescriptions for the Pirelli member's transactions listed.

Pirelli also includes in the Amended Complaint a summary of an investigation of a complaint against Walgreens by Express Scripts, Inc. ("ESI") regarding the same general alleged conduct underlying Pirelli's case. Amend. Compl. ¶¶ 30, 43-49. Pirelli outlines the protracted investigation conducted by ESI, including audits of Walgreens stores throughout the country that uncovered "discrepancies for both ranitidine and other types of claims." Amend. Compl. ¶ 44, Ex. D. Pirelli has attached materials from the ESI investigation and lawsuit, including a letter from an ESI auditor to Walgreens reporting that "on-site reviews of actual prescriptions written for Zantac or ranitidine tablets, but filled with ranitidine capsules, b[ore] no physician authorization to make this change." Amend. Compl. ¶ 44, Ex. E.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the Amended Complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Detailed factual allegations" are not

required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *See id.* at 1950. A claim has facial plausibility when the factual content in the pleadings allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

In addition to stating a claim under Rule 12(b)(6), Pirelli's fraud claims must further satisfy Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "While [Rule 9(b)] does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The heightened pleading therefore requires a complaint alleging fraud to contain more substance to survive a motion to dismiss as compared to a Rule 12(b)(6) motion based on another cause of action. *See Ackerman v. Nw. Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (stating that Rule 9(b) forces "the plaintiff to do more than the usual investigation before filing his complaint"); *see Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (explaining that "[t]he rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party").

**<u>DISCUSSION</u>**

Walgreens alleges that Pirelli's Amended Complaint fails to state claims for violation of the thirty-five consumer fraud statutes alleged (Count II) or unjust enrichment (Count I).[1]  Because this Court previously determined that the sustainability of Pirelli's unjust enrichment claim depends on the viability of its consumer fraud claim, the Court first addresses the consumer fraud claim.  (*See* R. 30 at p. 13.)

**I.      Consumer Fraud**

As an initial matter, Pirelli's Amended Complaint fails to address the deficiency noted in this Court's prior order that it could not "determine which state consumer protection statute to use in analyzing whether Pirelli . . . stated a claim for consumer relief" because the Complaint contained no allegations with respect to where Pirelli "personally suffered injury."  (R. 30 at p. 6.)  Pirelli continues to assert that Walgreens violated thirty-five state consumer protection statutes without specifying where the fraudulent conduct injuring Pirelli occurred or where each alleged misrepresentation was made and received, making it impossible for this Court to perform a choice-of-law analysis.  *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007) (in determining which state's law to apply in actions alleging "false representations" where the reliance on the representations took place in a state other than where false representations were made, the Court must look to the following factors: (a) the state where the plaintiff acted in reliance; (b) the state where the plaintiff received representations; (c) the state where defendant made

---

[1] The Court notes that Pirelli's Amended Complaint proposes a putative class containing all similarly situated TPPs in the United States and its territories that were affected by Walgreens' alleged scheme.  Amend. Compl. ¶ 50.  Despite the potential manageability and conflict problems with this expansive putative class, because Walgreens moves to dismiss pursuant to Rule 12(b)(6), the Court need not address the viability of a class action at this juncture.  *See e.g.*, *Szabo v. Bridgeport Machines., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (highlighting the differing factors considered for Rule 23 and Rule 12 motions).

representations; (d) the domicile, residence, place of incorporation, and place of business of the parties; and (e) the place where the tangible items that were the subject of the transaction between the parties were situated at the time). Indeed, two of the three states where Pirelli pleads "examples" of its members' transactions (Iowa and Louisiana) are not even listed in the Amended Complaint as states whose laws Walgreens allegedly violated. Because Pirelli's substantive arguments in its briefs apply the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), however, the Court will again address Pirelli's consumer fraud claim under the ICFA. *See American Home Assur. Co. v. Stone*, 61 F.3d 1321, 1324 (7th Cir. 1995) (applying Illinois law where parties argued only pursuant to Illinois law in their submissions before the trial court).

Walgreens asserts that Count II of the Amended Complaint fails to meet the heightened pleading standard of Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint alleging fraud or deception in violation of the ICFA must satisfy the same particularity requirements of Rule 9(b) as common law fraud claims. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881-82 (7th Cir. 2005); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996).[2] To satisfy the requirements of Rule 9(b), a plaintiff must set forth "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The Amended Complaint supplies some additional detail regarding the location of pharmacies where Pirelli members filled prescriptions for the more expensive AWP forms of ranitidine and fluoxetine. Pirelli argues that this transactional data, along with evidence of

---

[2]The only other consumer protection statute that either party has suggested might control the alleged harm to Pirelli is the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, *et seq.*, which also requires that claims meet the heightened standards of Fed. R. Civ. Proc. 9(b). *See Metropolitan Casualty & Ins. Co. v. Bell*, 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. App. Ct. 1995)).

Walgreens' policy of switching dosage forms in the *qui tam* case and the ESI Complaint, supports a consumer fraud claim against Walgreens. However, Pirelli's Amended Complaint fails to remedy the pleading deficiencies set forth in this Court's previous order. Even with its three examples of Walgreens filling a Pirelli member's prescriptions with a dosage different from that filled by another pharmacy, the Amended Complaint does not provide facts showing that any individual at a Walgreens store made a misrepresentation or concealed a material fact. (*See* R. 30 at p. 8) (explaining that Pirelli's original complaint failed meet the requirements of Rule 9(b) because it did not "identify any individual who made a misrepresentation of or concealed a material fact").

Instead of identifying a specific individual who made misrepresentations, Pirelli argues that Walgreens had a corporate policy of switching prescriptions. (R. 43 at pp. 10-11.) However, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Foster v. Center Township of La Porte County*, 798 F.2d 237, 245 (7th Cir. 1986) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). Pirelli's allegations do not connect the dots between Walgreens' alleged policy and named plaintiff Pirelli. (*See* R. 30 at pp. 6, 8.) (instructing Pirelli to clarify "where it personally suffered injury," that "it was defrauded by Walgreens" and "details regarding Walgreens' fraudulent conduct toward Pirelli"). Indeed, the Amended Complaint does not identify the time, place, contents, and method of any specific misrepresentation directed toward Pirelli or its PBM that was made as a result of the alleged corporate policy. *See DiLeo*, 901 F. 2d at 627 (Rule 9(b) particularity requires "the who, what, when, where, and how"); *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing*, 536 F.3d 663, 670 (7th Cir. 2008) (Rule 9(b) requires a party to plead "the identity of the person

who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (internal citation omitted). Furthermore, as the Court explained in its previous order, although allegations from the *qui tam* case against Walgreens helps lay the foundation for Pirelli's argument about Walgreens' corporate policy, it does not substantiate Pirelli's claim that it was itself defrauded by Walgreens. (*See* R. 30 at p. 8.) Similarly, the assertions by a different PBM about Walgreens' actions with respect to that PBM in the ESI case supply no additional information about Walgreens' actions with respect to Pirelli.

Pirelli then argues that even if its consumer fraud claim does not meet the heightened pleading standard set forth in Rule 9(b), it has successfully stated a claim under the unfairness prong of the ICFA. Although unfair business practices claims under the ICFA no longer need to meet Rule 9(b)'s heightened pleading standard, ICFA claims sounding in fraud or deception are still required to meet the heightened pleading requirements of Rule 9(b). *See Windy City*, 536 F.3d at 668, 670. Because Count II of Pirelli's Amended Complaint refers to both unfair practices and fraud under the ICFA, the Court must determine whether the gravamen of the Amended Complaint is in fraud or in unfairness. *See, e.g.*, *Morrison v. YTB Int'l*, 641 F. Supp. 2d 768, 774 (S.D. Ill. 2009) (even though plaintiff argued that its complaint did not aver fraud, the complaint "taken as a whole, appear[ed] to allege deceit by Defendants, so that it is reasonable to suppose the gravamen of Plaintiff's claim is fraud" and should be analyzed under rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (where claim was "grounded in fraud," "the pleading of that claim as a *whole* [had to] satisfy the particularity requirement of Rule 9(b)" and should not have been analyzed under the unfairness prong).

Unlike in *Windy City* where Count I of the plaintiff's complaint alleged only "unfair practices" and did "not allege fraud," 536 F.3d at 669-70, here Pirelli's Amended Complaint sounds in fraud and deception: it makes allegations of a "fraudulent, . . . immoral, unethical, oppressive, and unscrupulous" scheme. *See* Amend Compl. ¶ 30. In contrast to cases where the plaintiff alleged only "unfair" (but not fraudulent) conduct, *see Demitro v. General Motors Accept. Corp.*, 902 N.E.2d 1163, at 1163-64 (Ill. App. 2009), Pirelli's broad allegations of fraud, deception, and unscrupulousness raise the very concerns that Rule 9(b) seeks to protect in requiring particularity. *See Kennedy v. Venrock Associates*, 348 F.3d 584, 594 (7th Cir. 2003) ("A principle purpose of requiring that fraud be pleaded with particularity is . . . to protect individuals and businesses from privileged libel."). Indeed, if adding an allegation of "unfairness" to every allegation of fraud required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer fraud cases would be pleaded with these words and be subject to the less stringent standard.

Even if the Court were to analyze Pirelli's unfair practices claim pursuant to the general pleading standard under Rule 8(a), however, it would fall short. At the pleading stage, a plaintiff must allege facts that are more than "merely consistent with" a viable cause of action. *See Twombly*, 550 U.S. at 557. To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive act or unfair practice by the defendant; (2) defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *See Demitro*, 902 N.E.2d at 1168 (citing *Saunders v. Michigan Ave. Nat. Bank*, 662 N.E.2d 602 (Ill. 1996)).

Pirelli's ICFA claim rests on the allegation that Walgreens engaged in an unlawful scheme to overcharge TPPs. Amnd. Compl. ¶ 1. However, the Pirelli member transactions set forth the

Amended Complaint are "merely consistent" with an unlawful scheme to overcharge Pirelli. *See Twombly*, 550 U.S. at 557. It is possible that the pattern of transactions identified in the Amended Complaint is the result of a Walgreens' policy instructing that prescriptions for ranitidine tablets be filled with ranitidine capsules; however, it is also possible that the doctors of the Pirelli members actually prescribed the capsule form of ranitidine for them. Indeed, Pirelli admits that it only "suspects that some or all of the [prescriptions at issue] may have been written for the lower priced generic formulations, yet dispensed by Walgreens for the more expensive formulations." Amend. Compl. ¶ 34. The Amended Complaint fails to identify any deceptive statement or conduct directed to Pirelli by Walgreens upon which it relied, and, as such, Pirelli's consumer fraud claim does not the rise above the speculative level. *See Iqbal*, 129 S.Ct. at 1949 (the court must be able to draw a reasonable inference that the defendant is liable for the misconduct alleged in order to raise claim beyond the speculative level); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (a complaint must do more than "*avoid foreclosing* possible bases for relief," and must "actually *suggest* that plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level"). Because Pirelli has failed to plead its ICFA claim with the particularity required by Rule 9(b) and fails to state an IFCA claim under Rule 12(b)(6), Count II is dismissed.

## II.     Unjust Enrichment

Pirelli re-asserts its argument that Count I, a claim for unjust enrichment, can survive independently of its consumer fraud claims. Count I seeks the establishment of a constructive trust that would provide restitution of the reimbursement differential between the more and less expensive dosage forms of ranitidine and fluoxetine. The Court directly addressed this issue in dismissing Count I of Pirelli's original complaint, holding that absent a fiduciary relationship with Walgreens,

an unjust enrichment claim requires underlying wrongful conduct. *See Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985) (holding that a cause of action for unjust enrichment requires some underlying "unlawful or improper conduct as defined by law, such as fraud, duress or undue influence"). Pirelli has not alleged a fiduciary relationship with Walgreens. Thus, Pirelli's unjust enrichment claim can only survive in conjunction with allegations of wrongful conduct. Pirelli's allegations of wrongful conduct are all couched in terms of consumer fraud--namely, an alleged scheme to overcharge TPPs. Pirelli fails to state a claim of consumer fraud and, therefore, its unjust enrichment claim also fails. *See e.g.*, *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) (upholding dismissal of unjust enrichment claim when trial court found that there was no underlying violation of the ICFA).

## CONCLUSION AND ORDER

For the reasons stated above, Walgreens' Motion to Dismiss with is granted. Counts I and II of Pirelli's Amended Complaint are dismissed with prejudice.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 18, 2010